# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND; MONTANA ENVIRONMENTAL INFORMATION CENTER; and CITIZENS FOR CLEAN ENERGY,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY; and ANDREW R. WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>*Defendants*. | Case No.: 4:21-cv-00003-BMM-JTJ<br><br>The Honorable Brian Morris, Chief Judge |

## DECLARATION OF RICHARD D. LIEBERT

I, Richard D. Liebert, declare as follows:

1. I am the President of Citizens for Clean Energy, Inc. and the Chair of its Steering Team.

2. Citizens for Clean Energy (CCE) is nonprofit organization of Montana citizens whose objective is to convince decisionmakers to adopt clean energy solutions in order to preserve Montanans' health, lifestyle, and heritage and to protect Montana's land, air, water, and communities from the consequences of fossil fuel development, including the pollution and chemical effects of Montana's coal

industry. CCE is based in Great Falls, Montana and has members throughout the state.

3. As part of this mission, CCE aims to ensure that federal officials, including the U.S. Environmental Protection Agency (EPA), comply with and fully uphold the laws of the United States that are designed to protect Montana communities and the environment from the pollution and chemical effects of fossil fuel development. Its work includes advocacy to reduce the use and impacts of dirty coal production and waste, advocacy CCE backs up with the best available science. CCE works to protect Montanans and our fundamental right to a clean and healthful environment under Montana's Constitution.

4. This effort includes participating in EPA rulemakings and, when necessary, engaging in litigation against EPA to ensure that it protects the interests of CCE and its members, both of which depend on CCE's ability to rely on the best available science and to ensure that EPA accord this science full weight in its decision-making. CCE believes that fully informed scientific decision-making is critical in order to reach good decisions that affect human health and our environment.

5. CCE brings this action on its own behalf and on behalf of its members.

6. CCE members have intensive, long-standing recreational, aesthetic, scientific, professional, and spiritual interests in the responsible production and use

of energy and the land, air, water, and communities impacted by fossil fuel development.

7. I am familiar with the new EPA rule "Strengthening Transparency in Pivotal Science Underlying Significant Regulatory Actions and Influential Scientific Information" published in the Federal Register on January 6, 2021, which addresses how EPA may consider or rely upon studies that assess "the quantitative relationship between the amount of dose or exposure to a pollutant, contaminant, or substance and an effect" on human health in setting standards or developing "influential scientific information." 86 Fed. Reg. 469, 470, 492 (Jan. 6, 2021) (codified at 40 C.F.R. § 30.2) (the "Rule"). The Rule limits EPA's ability to consider such "dose-response data" for which the underlying data cannot be made "publicly available in a manner sufficient for independent validation." *Id.* at 492 (codified at 40 C.F.R. § 30.5(c)). In practice, that would mean many studies of the impacts of pollution and chemicals on human health—just the sorts of studies on which CCE advocacy depends—would receive less weight in EPA decision-making. It is my understanding that many of these studies are based on confidential subject information that cannot be made publicly available under the conditions imposed by universities, Institutional Review Boards, and agreements with participants.

8. The Rule will have immediate consequences for CCE. It will now be more difficult, and more expensive, for us to incorporate the best scientific evidence

3

into our advocacy before EPA. We will now need to begin any federal advocacy with figuring out the implications of the rule, determining what studies it covers, and assessing whether there are any available alternatives. This will frequently mean we either can't make the most compelling arguments about the links between fossil fuel development and human health—or that, when we do make those arguments, our advocacy will have little to no effect on EPA decision-making. The process of adjusting our advocacy to account for these changes will consume our scarce resources.

9. And the EPA decision-making on which we depend will also suffer. When EPA refuses to accord full weight to the best available science reflecting the impacts of pollution and chemicals on human health—or must go through a more lengthy and difficult process in order to consider any such evidence—its standards and influential scientific information will be unable to fully account for the findings of that science. Even when it can do so, the lengthy review and exceptions process the Rule imposes mean that EPA decision-making will be slower and less responsive to scientific discoveries. This means fewer protections for Montana communities that depend on EPA regulation of pollutants and chemicals—including coal ash, carbon dioxide, benzene, particulate matter, and nitrogen oxides—and accordingly fewer of the protections CCE advocates for.

10. CCE members live and recreate on public lands and in urban spaces affected by pollution and chemicals attributable to coal mining, coal waste management, and oil and gas development. Concentrations of pollution and chemicals in these spaces create increased health risks for CCE members, including asthma, emergency room visits, and premature mortality. Damage from these pollutants to the landscape and the environment diminishes those members' enjoyment from recreating in affected spaces, including federal public lands. CCE members depend on EPA regulation to reflect the best available science to protect these spaces and the health of those who depend on them.

11. Because of these concerns, CCE intends to exercise its right to request that EPA administratively postpone the effective date of the Rule under Section 705 of the Administrative Procedure Act (APA). But, because of EPA's decision to issue the Rule effective immediately in violation of Section 553(d) of the APA, CCE is deprived of its ability to seek its desired stay.

12. If the Court sets aside the EPA's decision to put the Rule into effect immediately, CCE will immediately join the other plaintiffs in this case in seeking a Section 705 stay.

13. If, however, the Court does not grant the requested relief, CCE will lose its right to seek such a stay and the Rule will remain in immediate effect—even if EPA otherwise would have postponed it. As a consequence, CCE and its members

will lose the opportunity to avoid the consequences of the Rule—including lost resources, disruption of science-informed regulation, and the health, safety, and welfare consequences that follow.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 8, 2021

_____
Richard D. Liebert